AMY, APPELLANT, *v.* THE REGISTRAR OF PROPERTY, RESPONDENT.

APPEAL from a Decision of the Registrar of Property of Guayama Refusing Admission to Record of a Deed of Bargain and Sale and Voluntary Mortgage.

No. 182.—Decided July 9, 1914.

ADMINISTRATIVE APPEAL—BRIEF OF REGISTRAR.—In cases like the present, registrars of property should brief in detail the reasons for their decisions and cite the authorities on which they rely so as to insure greater exactitude in the decisions rendered by the court.

Record of Title—Bargain and Sale—Voluntary Mortgage.—A `deed of bargain and sale and voluntary mortgage having been presented for record in the registry of property, by which deed the owner of a property sold the same to another person for a fixed sum of which the vendor admitted she had received a part from the vendee, who agreed to pay the balance to certain persons within fifteen days after the death of the vendor and created a mortgage on the property so acquired for the purpose of guaranteeing the deferred payment, it was held that the said deed was recordable.

Deferred Obligations—Conditional Obligations.—There are similarities and differences between the maturity and the conditions of obligations which must be distinguished in order not to confuse a deferred obligation with a conditional one. The condition is an uncertain event, whereas the term is an event which is bound to take place, although it is not known when. The condition may be such that the obligatory relation may or may not have effect, whereas the term merely places a limitation upon the time when the contractual relation shall take effect.

Id.—Day Certain.—When, as in the case at bar, it is covenanted in a deed of bargain and sale and voluntary mortgage that the deferred payment shall be made to certain persons fifteen days after the death of the vendor, the setting of that date should be understood as a day certain on which the obligation is demandable, pursuant to the provisions of section 1092 of the Revised Civil Code.

Id.—Mortgage.—In accordance with law, jurisprudence, and custom, the purchaser of a property may create a mortgage thereon in the same deed by which he makes the purchase in order to guarantee the deferred instalment of the purchase price.

The facts are stated in the opinion.

Mr. *Manuel A. Rivera* for the appellant.

Mr. Felipe Cuchí, the registrar, filed a brief *pro se*.

Mr. Justice del Toro delivered the opinion of the court.

Upon presentation in the Registry of Property of Guayama of deed of bargain and sale and voluntary mortgage No. 100, executed by Juana Domínguez y Rivera in favor of Aurelia Amy y Domínguez on May 24, 1913, before Notary Manuel A. Rivera, the registrar refused to record the same for the reasons stated in the following decision, from which the present appeal has been taken:

"Admission to record of the foregoing document is denied for the reason that it contains a contract of bargain and sale and a mortgage which are void because they involve a condition of payment whose fulfilment is based on the fact of the death of the vendor. A cautionary notice has been entered  *  *  *."

From an examination of the deed referred to it appears that Juana Domínguez y Rivera, the owner of a rural property which is duly described, sold the same to Aurelia Amy y Domínguez for the sum of $12,460, of which the vendor acknowledged having received $8,000 and the purchaser remained owing $4,460, it being agreed "that this balance due shall be paid by the said Aurelia Amy, without interest, within fifteen days after the death of the vendor, Juana Domínguez, to the following persons" (naming them). In order to secure the payment of the balance due, the purchaser created a mortgage on the same property in favor of the persons to whom she had to pay the said sum within fifteen days after the death of the vendor.

Notwithstanding the fact that copies of the notice of appeal and of the brief of the appellant were sent to the respondent registrar and that he was given ten days within which to make such defense as he might deem necessary, said official submitted nothing. It is very desirable that registrars should always submit more or less fully the grounds for their decisions and cite the authorities on which they are based. This enables us to decide the questions involved with confidence that both sides of each question have been heard and, consequently, with greater certainty of accuracy. To this end the registrar was requested again to submit a brief and he then did so, alleging that the decision appealed from should be affirmed for the following reasons:

"I. Because contracts *inter vivos* binding upon the parties cannot contain obligations *mortis causa*, which from their nature are revocable, and in the contract of bargain and sale and mortgage between Juana Domínguez and Alfredo Amy the death of Juana Domínguez is made a condition precedent, inasmuch as the purchaser is under no obligation to consummate the contract of bargain and sale by paying the deferred instalment of the purchase price to the persons designated by the said vendor until after her death. It is a contract *inter vivos* with a condition *mortis causa* and, pursuant to section 1083 of the Civil Code, impossible conditions, conditions

contrary to morality and conditions forbidden by law annul the obligation depending upon them.

"II. Because the purchaser created a mortgage in favor of third parties in order to secure the payment of the deferred instalment and as the contract of bargain and sale, the payment of which is secured in part by the mortgage, cannot be consummated during the life of the vendor, the vendee appears as creating a mortgage in favor of third persons upon property which does not belong to him, nor will belong to him during the life of the vendor; and according to subdivision 2 of section 1785, it is an essential requisite of a mortgage contract that the thing mortgaged shall be owned by the person mortgaging it.

"III. Because the mortgage and bargain and sale contract presented for record involves a condition *mortis causa* in providing for the payment of a part of the purchase price after the death of one of the contracting parties, and directly evades the provisions of section 368 of the Political Code, because as it provides for the payment of certain amounts to third persons after the death of the grantor without any obligation whatever on the part of the third parties, it makes it unnecessary, in this case, to designate legatees."

We will examine the three grounds of the decision appealed from in the same order in which they have been presented.

I. In our opinion, the deed of May 24, 1913, is properly styled by the notary who drew it up as a deed of bargain and sale and voluntary mortgage. By the contract of bargain and sale one of the contracting parties binds himself to deliver a certain thing and the other to pay a certain sum of money or its equivalent therefor, and by the mortgage the fulfilment of a principal obligation is secured. In the present case all the necessary elements for the execution of both contracts exist. As regards the contract of bargain and sale, there is a specific thing, namely, the rural property described in the deed, and a fixed price in money, namely, $12,460. As to the mortgages, there is a principal obligation, the fulfilment of which is secured thereby, namely the payment of $4,460 due as a part of the purchase price of the property sold.

The only confusion in this case arises from the fact that payment of a part of the purchase price of this property is

defer to "within fifteen days after the death of the vendor."
If exactly the same contract had been entered into and it had
been agreed therein that the deferred instalment should be
paid, for example, one year after the date of the execution
of the deed, certainly no objection would have been raised
by the registrar and the contract would have been recorded
in the registry without difficulty.

Does the said fact that payment of a part of the price was
deferred to within fifteen days after the death of the vendor
essentially change the nature of the contract? Taking into
consideration the circumstances of this case and bearing in
mind that it is sought only to classify the deed according
to its own tenor in order to decide whether or not it is record-
able in the registry of property, our answer is in the negative.

We cannot conclude that we are confronted here by a con-
dition impossible to fulfil or one contrary to morality or for-
bidden by law. Apparently the registrar has confounded the
*term* with the *condition.* The obligation contracted by Aure-
lia Amy in the deed of May 24, 1913, is not a conditional but
a deferred obligation. Referring to the similarities and dif-
ferences between the term and the condition, Manresa ex-
presses himself as follows:

"Analogies and differences exist between the term and the con-
dition of obligations.

"(a) *As to fulfilment.*—It is sufficient to note the idea and effects
of the term in order to observe clearly the similarity which in any
of its aspects it bears to the corresponding condition; nevertheless,
there are evident and very important differences between the one
and the other, the principal one being clearly expressed in this arti-
cle of the code. According to article 1113, the condition is an uncer-
tain event and the term is an event which necessarily must happen,
sooner or later, on a date known beforehand, or at a time which can-
not be determined. So essential is that difference that the legislators,
knowing of it and rightly foreseeing that by reason of technical defi-
ciencies in contractual acts an event of uncertain occurrence may
be classified as a term, provided that in such cases, preferring the

spirit to the letter, an obligation affected by such an event shall be considered a conditional obligation.

"(*b*) *As to the time*.—Another difference, although less important than the foregoing, is that while the term looks to the future, it always having to take place in the future, the condition, provided that its fulfilment is known to the interested parties, may have taken place at a former time.

"(*c*) *As to the influence on the obligation*.—A consequence of the differences already explained, especially the first, is the different influence of one and the other element on the contractual relation. The condition may or may not suspend the contractual relation, having the effect that it may or may not exist. The term goes no further than to impose a limitation on the time when the said relation takes effect and its efficacy. It is true that it also has a suspensive or terminating effect; but when it suspends, it does not go so far as to prevent the obligation from finally arising, and when it terminates the obligation, it does not rescind the fact of its existence, not even as a fiction of law." 8 Manresa, *Código Civil Español*, 153, 154.

Let us see whether the term fixed in this case complies with the requirements of the law. Section 1092 of the Revised Civil Code, referring to obligations with definite periods, provides that these shall be demandable only when the day certain fixed for their fulfilment arrives, and states that "A day certain is understood to be one which must necessarily arrive, even though its date be unknown." We do not know when the hour of our death will come, but we are all quite sure that it will come. Therefore to fix the fulfilment of an obligation for a term of fifteen days, for example, after the death of a person, should be understood as fixing a day certain on which the contracted obligation will be demandable. Commenting on article 1125 of the Spanish Civil Code, which is similar to section 1092 of our code, Manresa says:

"Both kinds of terms may be determinate or indeterminate, according to whether the former refers to a known date (*e. g.,* a certain day of a certain year), or to an event which must inevitably happen, although the date is not known (*e. g.,* the death of a person)." 8 Manresa, *Código Civil Español*, 156.

On page 304 of volume 4 of his Dictionary of Legislation Escriche gives the following definition:

"*Obligation certain or uncertain.*—That which is contracted for fulfilment within a certain period of time, whether fixed, as within six months or on the first day of a certain month, or indeterminate, as on the day of the death of a certain person."

II. The registrar cites section 1758 of the Civil Code in support of his denial of the record on the ground of the nullity of the mortgage because it was created, in his opinion, by a person who did not own the real property mortgaged. It is true that subdivision 2 of the said section states that it is an essential requisite of a mortgage contract that the thing mortgaged be owned by the person who mortgages it, but it is also true that it cannot be held in the present case that Señora Amy was not the owner of the mortgaged property at the time it was encumbered. By the deed of May 24, 1913, she acquired the ownership of the property and immediately encumbered it to respond for the deferred part of the purchase price, thus performing acts which are entirely logical and authorized by custom and by law.

This is not a new question. Prior to the Civil Code the Spanish Mortgage Law provided that a mortgage could not be created on any real property by a person who did not prove his ownership. After the said law was promulgated the question arose as to whether a mortgage could be created at the same time when the ownership of the thing to be mortgaged was acquired—that is, by a person who did not yet own the property but who was to acquire the ownership by the same act or at the same time—and, therefore, before the said property was recorded in his name in the registry, and the question was decided in the affirmative by the General Directorate of Registries, but under the condition that the ownership should be first recorded and the mortgage immediately thereafter. See 12 Manresa, Civil Code, 284, and the decision of

the General Directorate of Registries of October 11, 1874, December 22, 1862, August 17, 1863, and October 30, 1871.

III. As regards the indirect violation of section 368 of the Political Code pointed out by the registrar, we will say only that to refuse admission to record of the deed on such ground would be equivalent to arriving at the conclusion that a fraud had been committed against the public treasury; and to reach such a conclusion more evidence would be necessary than the doubts which may arise in the mind of one who examines the deed of May 24, 1913, on account of the peculiar manner of arranging for the payment of a part of the price of the property sold.

As we said before, the only object of this appeal is to decide whether the deed in question is recordable or not. In view of all the attendant circumstances, we think that it is, and that, therefore, the appeal should be sustained, the decision appealed from reversed and the record applied for ordered.

*Reversed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.